UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ROBINSON, JR. ,

    Plaintiff,                                         Hon. Janet T. Neff

v.                                                     Case No. 1:14-cv-00516

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 48 years of age on his alleged disability onset date. (Tr. 12, 132). He possesses a tenth grade education and worked previously as an injection machine tender and press operator. (Tr. 20, 446, 472). Plaintiff first applied for benefits on November 30, 2009, alleging that he had been disabled since October 13, 2009. (Tr. 41). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). On August 4, 2011, Plaintiff appeared before ALJ Janet Alaga-Gadigian with testimony being offered by Plaintiff and a vocational expert. (Tr. 481-532). In a written decision dated September 15, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 41-52).

Plaintiff did not appeal this determination to the Appeals Council, but instead reapplied for benefits on December 21, 2011, alleging that he had been disabled since October 13, 2009. (Tr. 132-35). Plaintiff later amended his disability onset date to September 16, 2011. (Tr. 12). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). On April 1, 2013, Plaintiff appeared before ALJ Luke Brennan with testimony being offered by Plaintiff and a vocational expert. (Tr. 438-80). In a written decision dated June 6, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 12-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision

in the matter. (Tr. 4-7). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

ALJ Brennan determined that Plaintiff suffers from: (1) diabetes mellitus; (2) obstructive sleep apnea; (3) multilevel degenerative changes in the thoracic spine; (4) obesity; (5) depression, not otherwise specified; and (6) psychosis, not otherwise specified, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 14-17).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday, he can walk/stand for 6 hours and sit for 6 hours; (3) he must be able to alternate positions at will; (4) he can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (5) he can occasionally stoop, kneel, balance, and crawl; (6) he should avoid hazards such as unprotected heights and dangerous or moving machinery; (7) he can perform unskilled work with an SVP rating

of 1 or 2;[2] and (8) he should have no more than occasional interaction with co-workers, supervisors, or the general public. (Tr. 17).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the lower peninsula of Michigan approximately 9,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 471-74). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274

---

[2] SVP ratings measure the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* Dictionary of Occupational Titles, Appendix C, available at http://www.occupationalinfo.org/appendxc_1.html (last visited on July 30, 2015). A job with an SVP rating of 1 corresponds to a job that a typical worker can perform after a "short demonstration only." A job with an SVP rating of two corresponds to a job that a typical worker can perform after "anything beyond short demonstration up to and including 1 month." *Id.*

(6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**I.        ALJ Brennan's RFC Determination**

In assessing Plaintiff's present claim for benefits, ALJ Brennan adopted the RFC findings previously articulated by ALJ Alaga-Gadigian. Plaintiff argues that because his psychological impairments worsened subsequent to ALJ Alaga-Gadigian's decision, the decision by ALJ Brennan to adopt this previous RFC is not supported by substantial evidence. The issue of whether or when a subsequent ALJ must follow an RFC determination articulated by a prior ALJ has been addressed by the Sixth Circuit in *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990) and *Drummond v. Commissioner of Social Security* 126 F.3d 837 (6th Cir. 1997), as well as by the Social Security Administration in Acquiescence Rulings 98-3(6) and 98-4(6).

   A.    *Dennard v. Secretary of Health and Human Services*

Dennard filed an application for benefits which was eventually denied on the ground that while he could no longer perform his past relevant work, he retained the ability to perform sedentary work which existed in significant numbers. *Dennard*, 907 F.2d at 598-99. Dennard later submitted another application for benefits. This latter application was denied by an ALJ on the ground that Dennard *could* perform his past relevant work. *Id.* at 599. An appeal of this decision to federal district court was unsuccessful. The Sixth Circuit reversed the district court and ordered that the matter be remanded for further consideration. *Id.* at 600. Specifically, the court held that

the latter ALJ was estopped, on res judicata grounds, from contradicting the prior determination that Plaintiff was unable to perform his past relevant work. *Id.*

### B. *Drummond v. Commissioner of Social Security*

Drummond filed an application for benefits which was denied based on a finding that while she could no longer perform her past relevant work she could perform sedentary work which existed in significant numbers. *Drummond*, 126 F.3d at 838. Drummond later filed another application for benefits which was denied based on the finding that she retained the ability to perform medium work. *Id.* at 838-39. After unsuccessfully appealing the matter in federal district court, Drummond pursued the matter in the Sixth Circuit. *Id.* at 839-40. Based, in part, on the *Dennard* decision, the *Drummond* court held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at 840-42. Thus, if an earlier ALJ makes a finding regarding a claimant's RFC, a later ALJ is bound by that RFC determination absent evidence to the contrary. *See, e.g., Gay v. Commissioner of Social Security*, 520 Fed. Appx. 354, 356 (6th Cir., Apr. 2, 2013).

### C. Acquiescence Rulings 98-3(6) and 98-4(6)

Finding that *Dennard* and *Drummond* conflicted with Social Security policy, the Social Security Administration issued Acquiescence Rulings 98-3(6) and 98-4(6). *See* Acquiescence Ruling 98-3(6), 1998 WL 274051 (Soc. Sec. Admin., June 1, 1998); Acquiescence Ruling 98-4(6),

1998 WL 274052 (Soc. Sec. Admin., June 1, 1998).  With respect to how *Dennard* and *Drummond* differed from Social Security policy, the Social Security Administration observed:

> Under SSA policy, if a determination or decision on a disability claim has become final, the Agency may apply administrative res judicata with respect to a subsequent disability claim under the same title of the Act if the same parties, facts and issues are involved in both the prior and subsequent claims. However, if the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata. Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues de novo in determining disability with respect to the unadjudicated period.

Acquiescence Ruling 98-3(6), 1998 WL 274051 at 29771; Acquiescence Ruling 98-4(6), 1998 WL 274052 at 29773.

As the Social Security Administration recognized, the *Dennard* and *Drummond* decisions conflicted with Social Security policy.  Specifically, the Sixth Circuit concluded that where a final decision by the Social Security Administration contains findings regarding the claimant's ability to perform his past relevant work (*Dennard*) or the claimant's residual functional capacity (*Drummond*), the Administration "may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding." Acquiescence Ruling 98-3(6), 1998 WL 274051 at 29771; Acquiescence Ruling 98-4(6), 1998 WL 274052 at 29773.

Accordingly, the Social Security Administration concluded that it would apply *Dennard* and *Drummond*, within the Sixth Circuit, thusly:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

Acquiescence Ruling 98-3(6), 1998 WL 274051 at 29771; Acquiescence Ruling 98-4(6), 1998 WL 274052 at 29773.

In other words, the Social Security Administration adopted, with respect to applications brought within the geographic territory of the Sixth Circuit, the holdings in *Dennard* and *Drummond*. In sum, an Administrative Law Judge is bound by a previous Administrative Law Judge's residual functional capacity absent changed circumstances.

### D.  ALJ Brennan's RFC Assessment

In his decision denying Plaintiff's claim, ALJ Brennan found that "there is very little evidence of any change in [Plaintiff's] impairments." (Tr. 17). Specifically, with respect to Plaintiff's emotional impairments, ALJ Brennan concluded "there were no significant changes in [Plaintiff's] mental impairment, and I find that any changes in [Plaintiff's] mental status remain adequately accounted for within the residual functional capacity." (Tr. 17). The Court finds that this conclusion is supported by substantial evidence.

The evidence prior to ALJ Alaga-Gadigian's decision reveals that Plaintiff was experiencing severe emotional impairments. A December 23, 2010 examination revealed that Plaintiff was experiencing "irrational visual perceptions" that resembled his deceased father. (Tr.

204). Plaintiff was diagnosed with major depressive disorder and cocaine abuse in remission. (Tr. 206). Plaintiff's GAF score was rated as 45.[3] (Tr. 206). Treatment notes dated June 20, 2011, indicate that Plaintiff was experiencing auditory and visual hallucinations. (Tr. 264). Plaintiff also reported, however, that he "has never sought treatment for psychiatric problems previously." (Tr. 264). Plaintiff was diagnosed with depression and psychosis for which he was prescribed medication. (Tr. 264). Treatment notes dated July 20, 2011, indicate that Plaintiff was continuing to experience hallucinations. (Tr. 258). Plaintiff's medication regimen was modified. (Tr. 258).

The evidence subsequent to ALJ Alaga-Gadigian's decision does not support Plaintiff's argument that his impairments worsened such that ALJ Brennan was precluded from adopting the previous RFC. Treatment notes dated October 19, 2011, indicate that Plaintiff was "somewhat depressed," but continuing to experience hallucinations. (Tr. 257). The examiner reported that Plaintiff was "compliant" with treatment and had experienced a "slight improvement" in his condition. (Tr. 257). Plaintiff also reported that he was consuming a "pint of gin" 2-3 times monthly. (Tr. 257). Plaintiff was reminded of the "effect of alcohol on [his] mood and meds." (Tr. 257). A January 26, 2012 examination revealed "no change" in Plaintiff's condition. (Tr. 256). The examiner also reported that Plaintiff "has cut down significantly" his alcohol consumption since October 2011. (Tr. 256). On February 17, 2012, George Starrett, Ed.D., concluded that there was no evidence that "reflects a significant change in functioning." (Tr. 30). On May 20, 2013, Dr. Daniel Mankoff reported that Plaintiff's emotional impairments "do not really seem to bother him very much." (Tr. 409).

---

[3] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 45 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

Plaintiff only began receiving treatment for his emotional impairments shortly before ALJ Alaga-Gadigian rendered her decision. The evidence subsequent to this decision indicates that Plaintiff's condition, at worst, stabilized. The evidence also reveals that Plaintiff subsequently reduced his alcohol intake which could only have improved his condition. In sum, the conclusion by ALJ Brennan that there did not exist changed circumstances requiring the calculation of a new RFC is supported by substantial evidence. Thus, the decision by ALJ Brennan to adopt the RFC articulated by ALJ Alaga-Gadigian was appropriate. This argument is, therefore, rejected.

**II.        Dr. Mankoff's Opinions**

Dr. Mankoff twice offered opinions regarding Plaintiff's ability to work. (Tr. 348, 409). The ALJ, however, afforded "little weight" to such. (Tr. 20). Plaintiff asserts that he is entitled to relief because the ALJ's decision to afford less than controlling weight to the doctor's opinions is not supported by substantial evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the

examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

It is well settled that while medical professionals are permitted to offer opinions regarding a claimant's functional limitations, the question whether a claimant is disabled or unable to work are matters reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see also, Sims v. Commissioner of Social Security*, 406 Fed. Appx. 977, 980 n.1 (6th Cir., Jan. 19, 2011) (a doctor's "implied opinion that plaintiff was unable to work is tantamount to a disability opinion, a matter reserved to the Commissioner for determination"). The two opinions on which Plaintiff's claim rests clearly run afoul of this limitation. On January 24, 2013, Dr. Mankoff reported that Plaintiff was "completely incapacitated from employment." (Tr. 348). On May 20, 2013, the doctor stated that "it is not clear that [Plaintiff] is capable of returning to work." (Tr. 409). Accordingly, this argument is rejected.

**III.**     **Vocational Expert Testimony**

As previously noted, in determining that there existed a significant number of jobs which Plaintiff could perform despite his impairments, the ALJ relied upon the testimony of a vocational expert. Plaintiff asserts that he is entitled to relief because the hypothetical question to which the vocational expert responded did not accurately describe his limitations.

While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 9,000 such jobs in the state of Michigan. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

### IV.        Plaintiff's Credibility

Plaintiff arguably has attempted to assert a claim regarding the ALJ's decision to discount his subjective allegations. The "analysis" of this particular argument consists of a single sentence inserted within the discussion of Plaintiff's argument that the ALJ failed to properly weigh Dr. Mankoff's opinions. The Court finds that any such argument regarding the ALJ's assessment of Plaintiff's credibility has been waived. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

Even if this argument were not waived, the result is the same. Plaintiff asserts that the ALJ improperly rejected his testimony "based upon [his] failure to seek treatment without first

considering whether the failure results from an inability to afford treatment." Even a cursory review of the ALJ's decision reveals that this is a completely inaccurate statement. The ALJ discussed the medical evidence of record and articulated in detail how such contradicted Plaintiff's subjective allegations. (Tr. 18-19). The ALJ's rationale in this regard is supported by substantial evidence. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See Smith v. Commissioner of Social Security*, 1999 WL 1336109 at *2 (6th Cir., Dec. 20, 1999); *Leal v. Commissioner of Social Security*, 2015 WL 731311 at *2 (N.D. Ohio, Feb. 19, 2015); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: August 3, 2015                                 /s/ Ellen S. Carmody
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge